# STATE OF MICHIGAN

# COURT OF APPEALS

BECKETT-BUFFUM AGENCY, INC.,

Plaintiff-Appellant,

v

ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY,

Defendant-Appellee.

FOR PUBLICATION
June 9, 2015
9:00 a.m.

No. 321273
Kent Circuit Court
LC No. 12-007629-CZ

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Plaintiff Beckett-Buffum Agency, Inc. appeals as of right the trial court's order granting defendant Allied Property & Casualty Insurance Company's motion for summary disposition pursuant to MCR 2.116(C)(10). Because plaintiff submitted fewer than 25 applications for insurance during the relevant time period, defendant could cancel plaintiff's Agency Agreement pursuant to MCL 500.1209(2)(e) and, therefore, we affirm.

On January 7, 2010, plaintiff entered into an Independent Agency Agreement with defendant, pursuant to which plaintiff was to serve as an agency for defendant in the insurance industry. On December 6, 2011, defendant sent plaintiff a letter terminating the Agency Agreement based on plaintiff's lack of production. In particular, pursuant to MCL 500.1209(2)(e) of the Insurance Code, MCL 500.100 et seq., an insurer may terminate an insurance producer's authority to represent the insurer with respect to automobile insurance or home insurance, when the insurance producer submits "less than 25 applications for home insurance and automobile insurance within the immediately preceding 12-month period."

In response to its termination, plaintiff filed this action, alleging that defendant breached its contractual and statutory duties to plaintiff when it terminated the Agency Agreement because plaintiff had submitted 29 applications for insurance policies to defendant in the applicable 12-month period. After the close of discovery, defendant moved for summary disposition pursuant to MCR 2.116(C)(10) and argued, in relevant part, that 6 of the 29 policies were policy renewals, not applications, meaning that, according to defendant, plaintiff had not reached the statutory threshold of 25 applications and termination was therefore appropriate. The trial court granted defendant's motion on this basis, and plaintiff now appeals as of right.

-1-

On appeal, plaintiff argues that the trial court erred by granting summary disposition to defendant because plaintiff submitted more than 25 applications to defendant within the relevant 12 month time period. Specifically, consistent with its arguments in the trial court, plaintiff maintains that the disputed six renewals of lapsed policies should be counted as "applications for home insurance and automobile insurance" within the meaning of MCL 500.1209(2)(e). If these six "renewals" constitute "applications," the parties agree that plaintiff obtained more than 25 applications in the relevant 12 month period.

We review a trial court's grant of summary disposition de novo. *Comerica Bank v Cohen*, 291 Mich App 40, 45; 805 NW2d 544 (2010). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is properly granted as a matter of law when there is no "genuine issue regarding any material fact." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). When reviewing a motion for summary disposition under MCR 2.116(C)(10), we consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in a light most favorable to the nonmoving party. *Id.* "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

In this case, whether the six policy renewals credited to plaintiff constitute "applications" involves a question of statutory interpretation. We review issues of statutory interpretation de novo. *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010). The primary goal of statutory interpretation is to give effect to the Legislature's intent, and it is well-recognized that the "words of a statute provide the most reliable evidence of its intent." *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011) (citation and quotation marks omitted). Consequently, we focus on the statute's plain language. *Id.* "[E]very word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). A dictionary may be consulted to determine a word's plain and ordinary meaning. *Id.* "When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011).

The relevant statutory language at issue in this case provides:

(2) As a condition of maintaining its authority to transact insurance in this state, an insurer transacting automobile insurance or home insurance in this state shall not cancel an insurance producer's contract or otherwise terminate an insurance producer's authority to represent the insurer with respect to automobile insurance or home insurance, except for 1 or more of the following reasons:

\*\*\*

(e) Submission of less than 25 *applications for home insurance and automobile insurance* within the immediately preceding 12-month period. [MCL 500.1209(2)(e) (emphasis added).]

As most basically defined, an "application" is a "request" or "petition." *Merriam-Webster's Collegiate Dictionary* (2014). "Submission" in this context indicates "an act of submitting something (as for consideration or inspection)." *Merriam-Webster's Collegiate Dictionary* (2014). And, finally, the term "insurance" generally denotes "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril." *Merriam-Webster's Collegiate Dictionary* (2014). Thus, MCL 500.1209(2)(e) plainly envisions that an insurance producer would submit for the insurer's consideration requests for insurance contracts providing home and automobile coverage.[1]

In contrast, contrary to plaintiff's argument, the statute does not contemplate renewal of existing policies or the reinstatement of lapsed policies as an "application." That is, when an insurance contract is "renewed," a request for coverage has been previously made and previously granted, and the renewal is merely a "continuation or extension" of already existing coverage under an existing contract. See 2 Couch on Ins. § 29:35. Indeed, an initial request for insurance typically involves a written application to the insurer, while such is not necessarily required for a mere "renewal" of a policy.[2] See, e.g., MCL 500.3037(1) and (6). Likewise, there is a distinction between a request for an insurance policy and the reinstatement of a lapsed policy because when a lapsed policy is subsequently reinstated, the reinstatement "is not a new contract of insurance, nor is it the issuance of a policy of insurance; but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse." *New York Life Ins Co v Buchberg*, 249 Mich 317, 321; 228 NW 770 (1930). In this sense, renewal of an existing policy or reinstatement of a lapsed policy is not in actuality a request for an insurance contract because such a policy already exists. We are, in short, persuaded that the reference to "applications for home insurance and automobile insurance" does not encompass subsequent efforts to extend or revive previously preexisting coverage. See *Black's Law Dictionary* (6th ed.) (defining "application" in the context of insurance as "[t]he *preliminary* request, declaration, or statement made by a party applying for an insurance policy . . . ." (emphasis added)).

Consistent with this conclusion, as support for its motion for summary disposition, defendant produced an affidavit from Jessica Zaugg, an underwriting director for defendant. Zaugg averred that defendant does not consider either the renewal of polices or the reissuance of lapsed or cancelled policies to be applications for insurance; that defendant does not perform the same underwriting practices for renewal of policies or reissuance of policies as for new applications; and that generally, an insured does not have to submit a signed application before a policy is renewed or reissued. Moreover, for each of the six renewal policies at issue, Zaugg averred that the policyholders originally applied for and received coverage before the time period at issue. Zaugg further explained that the renewal policies all had the same policy numbers as

---

[1] As used in MCL 500.1209(2)(e), "home insurance" and "automobile insurance" mean specifically the home and automobile insurance contemplated in MCL 500.2103(3) and MCL 500.2102(2) respectively. See MCL 500.1209(5).

[2] We note, however, that, in some cases, an application or request for insurance may be made orally. See MCL 500.2122(1).

the insureds' original policies and that "a signed application was not submitted by or on behalf of" the insureds before the policies were reissued. Plaintiff likewise concedes that the six policies at issue were merely renewals or reinstatements of previously existing coverage. Consequently, viewing the record in a light most favorable to plaintiff, it is clear that plaintiff did not submit 25 "applications," and thus defendant could terminate plaintiff's Agency Agreement pursuant to MCL 500.1209(2)(e).

Because defendant was statutorily-permitted to terminate the Agency Agreement if plaintiff submitted "less than 25 applications for home insurance and automobile insurance within the immediately preceding 12-month period," MCL 500.1209(2)(e), plaintiff's claim that defendant breached its statutory duties to plaintiff when it terminated the Agency Agreement fails. Further, the Agency Agreement permitted defendant to terminate the contract at any time by 90 days' written notice, and there is no dispute that defendant complied with this procedure. Therefore, plaintiff's claim that defendant breached its contractual duties to plaintiff when it terminated the Agency Agreement fails. As such, the trial court properly granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). *Maiden*, 461 Mich at 120.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray